IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

WALGREEN CO.,

    Plaintiff,

v.  No. 10-1334

GS LIGHTING SERVICE, INC. and
DEPOSITORS INSURANCE COMPANY,

    Defendants.

_____

ORDER FINDING DEFENDANT DEPOSITORS INSURANCE COMPANY
HAS NO DUTY TO DEFEND AND
REMANDING REMAINING ISSUE OF INDEMNIFICATION TO STATE COURT
_____

*INTRODUCTION*

On January 19, 2010, the Plaintiff, Walgreen Co. ("Walgreen"), filed a declaratory judgment action in the Circuit Court of Tennessee for the Twenty-Eighth Judicial District at Brownsville against GS Lighting Service, Inc. ("GS Lighting") and Depositors Insurance Company ("Depositors"). (D.E. 1-2.) The matter was removed to this Court on December 22, 2010. (D.E. 1.) Before the Court are the parties' cross-motions for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

*FACTS AND BACKGROUND*

The facts of this case are largely undisputed. The action arose out of a personal injury suit filed in the Twenty-Eighth Judicial District at Brownsville by Raymond Hazel and his wife Pamela in June 2009. (D.E. 1-2 ¶ 9.) According to the Hazels' complaint, on June 19, 2008, Mr. Hazel, an employee of GS Lighting, was on the premises of Walgreen to perform lighting repairs. (D.E. 1-2 ¶ 9.) While he was on a ladder, stacked items in the stockroom fell, causing him to lose his balance

and fall from the ladder. (D.E. 1-2 ¶ 9.) The Hazels alleged that Walgreen, store manager Sheryl Stuart, and associate store manager James Adkins negligently failed to maintain and inspect the stockroom. (D.E. 1-2 ¶ 9.)

GS Lighting, a Texas corporation doing business in Tennessee, entered into a Lighting Maintenance Service Agreement (the "Agreement") with the Plaintiff in April 2008. (D.E. 1-2 ¶¶ 2-3.) The Agreement provided in pertinent part as follows:

> 4.	[GS Lighting] assumes full responsibility and liability for any injury to [Walgreen] or any third persons or damage to property caused by or resulting from or arising out of any act or omission on the part of [GS Lighting], its employees, agents or subcontractors under or in connection with this Agreement or the performance of work hereunder. [GS Lighting] shall indemnify and hold harmless [Walgreen], its parent, subsidiaries, agents, employees, contractors, officers, and directors from and against any and all costs, losses, claims, expenses, including but not limited to attorney's fees and court costs, which [Walgreen] suffers or pays as a result of claims or suits arising out of any such damage or injury, (including death) caused by or resulting from negligence, willful misconduct or any other wrongful act(s) of [GS Lighting], its employees, agents and subcontractors. . . .
>
> 5.	[GS Lighting] agrees to purchase and maintain in full force and effect, during the entire term of this Agreement, comprehensive general liability and property damage insurance under which [Walgreen] shall be named as an additional insured. . . .

(D.E. 1-2 at 10.)

Pursuant to the Agreement, GS Lighting purchased commercial general liability ("CGL") insurance coverage from Depositors for a policy period of March 28, 2008 to March 28, 2009 (the "Policy"). (D.E. 1-2 ¶ 6.) The Policy contained an Additional Insured endorsement, which provided that an additional insured was covered "only with respect to liability for 'bodily injury' . . . caused, in whole or in part, by . . . [GS Lighting's] acts or omissions; or . . . [t]he acts or omissions of those acting on [its] behalf . . . in the performance of [its] ongoing operations for the additional insured[] . . ." (D.E. 16-2 at 32.)

2

On August 14, 2009, demand was made upon the Defendants on behalf of Walgreen to defend and indemnify it under the Agreement and the Policy with respect to the Hazel suit. (D.E. 1-2 ¶ 10.) In its answer to the Hazels' complaint filed four days later, Walgreen and its employees alleged contributory negligence and comparative fault on the part of Raymond Hazel. (D.E. 1-2 ¶ 11.) Depositors notified the Plaintiff of its refusal to defend under the Policy on September 29, 2009. (D.E. 1-2 ¶ 12.) Mr. Hazel filed a claim against GS Lighting for workers' compensation benefits in connection with the injuries sustained on June 19, 2008. (D.E. 1-2 ¶ 15.) He was barred from alleging negligence or fault against GS Lighting, as it was statutorily immune from suit for injuries arising out of and occurring within the course and scope of his employment. (D.E. 1-2 ¶ 16.) In this matter, the Plaintiff seeks a declaration that it and its employees are entitled to indemnity under the Agreement and the Policy, as well as defense under the Policy, in connection with the Hazel action.

*STANDARD OF REVIEW*

Rule 56 provides in pertinent part that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To survive summary judgment, the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." Pucci v. Nineteenth Dist. Ct., 628 F.3d 752, 759-60 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)) (internal quotation marks omitted). "A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party." Id. at 759 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "The district court must construe the

evidence and draw all reasonable inferences in favor of the nonmoving party." Am. Civil Liberties Union of Ky. v. Grayson Cnty., Ky., 591 F.3d 837, 843 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587, 106 S. Ct. 1348), *reh'g denied*, 605 F.3d 426 (6th Cir. 2010). "Entry of summary judgment is appropriate 'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" In re Morris, 260 F.3d 654, 665 (6th Cir. 2001) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)).

"The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." Ferro Corp. v. Cookson Group, PLC, 585 F.3d 946, 949 (6th Cir. 2009). "The fact that [multiple] parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one . . . or [another]; summary judgment in favor of [any] party is not proper if disputes remain as to material facts. Rather, the court must evaluate each party's motion on its own merits." Id. at 949-50.

*POSITIONS OF THE PARTIES AND ANALYSIS*

The parties are in agreement that the provisions of the Policy are governed by the law of Texas, the state in which it was issued, and the Agreement is subject to the laws of Tennessee. The Court will first address the Policy.

"Texas law provides that insurance policies are construed according to common principles governing the construction of contracts . . ." Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel L.L.C., 620 F.3d 558, 562 (5th Cir. 2010). "Limiting [their] inquiry to the four corners of the underlying complaint and the four corners of the insurance policy, [courts are to] interpret the contract to discern the intention of the parties from the language expressed in the policy." Id. "No

4

single provision taken alone will be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument." Id.

In Texas, "[t]he duty to defend means the insurer will defend the insured in any lawsuit that alleges and seeks damages for an event potentially covered by the policy, while the duty to indemnify means the insurer will pay all covered claims and judgments against an insured." Colony Ins. Co. v. Peachtree Constr., Ltd., 647 F.3d 248, 252-53 (5th Cir. 2011) (internal quotation marks omitted). "When an insured party is sued, an insurer's duty to defend is determined solely by the facts alleged in the petition and the terms of the policy." Id. at 253. "This is known as the eight-corners rule. Resort to evidence outside the four corners of these two documents is generally prohibited." Id. (internal citation & quotation marks omitted). This is true even if facts outside these documents are easily ascertained. GuideOne Elite Ins. Co. v. Fielder Rd. Baptist Church, 197 S.W.3d 305, 308 (Tex. 2006), *reh'g denied* (Aug. 25, 2006). "Moreover, the duty to defend does not rely on the truth or falsity of the underlying allegations; an insurer is obligated to defend the insured if the facts alleged in the petition, taken as true, *potentially* assert a claim for coverage under the insurance policy." Colony Ins. Co., 647 F.3d at 253. "Because the only two documents relevant to the duty-to-defend inquiry are the insurance policy and the petition, an insurer's duty to defend can be determined at the moment the petition is filed." Id. While the complaint is to be construed liberally and in favor of the insured, the court must not "imagine factual scenarios which might trigger coverage." Town Ctr. Mall v. Zurich Am. Ins. Co., 797 F. Supp. 2d 786, 792 (S.D. Tex. 2011) (citing Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Merch. Fast Motor Lines, Inc., 939 S.W.2d 139, 142 (Tex. 1997)).

The burden of initially establishing that a claim is potentially within a policy's coverage is

borne by the insured. Id. If the underlying complaint does not "present facts within the scope of the policy's coverage, the insurer is not legally obligated to defend a suit on behalf of the insured." Id. In asserting that the Hazels' claim falls within the Policy's coverage, Walgreen points to Gilbane Building Co. v. Empire Steel Erectors, L.P., 691 F. Supp. 2d 712 (S.D. Tex. 2010), which involved identical policy language and a nearly identical fact pattern.

In Gilbane, Michael Parr, an employee of Empire Steel Erectors ("Empire"), a subcontractor, was injured while climbing down a ladder at a construction site. Gilbane Bldg., 691 F. Supp. 2d at 713-14. He sued Gilbane, the general contractor in charge of the project, alleging that recent storms had caused mud to accumulate on the site and that Gilbane had negligently failed to keep the workplace clean. Id. at 714, 723-24. Parr did not bring an action against Empire. Id. at 714. Gilbane had previously entered into a contractor agreement with Empire under which the latter was required to secure coverage for the former as an additional insured under its CGL policy with Admiral Insurance Company ("Admiral"). Id. at 715. The Admiral policy contained the same additional insured provision at issue in the case at bar. *See* id. at 719. Gilbane requested that the insurer defend it in the action filed by Parr and was refused, based on the plain language of Parr's complaint and the CGL policy's additional insured provision. Id. at 715. The general contractor brought a declaratory judgment action in federal court seeking a declaration that Admiral had a duty to defend. Id.

The district court held as follows:

[T]he court cannot say that Parr himself, acting on behalf of Empire Steel in the course of his job, was not possibly a contributing, proximate cause of his injuries. The plain language of the petition states that he was injured while working for Empire Steel. The petition also states that the injuries occurred when Parr was walking down the ladder with muddy boots. This raises at least an inference that Parr himself could have been partly at fault. Additionally, under Texas's

6

comparative responsibility statute, Parr's negligence would have been at issue should Gilbane have been found liable in the underlying suit. The fact Parr's petition does not mention Empire Steel's possible negligence speaks only to the fact that the company is statutorily immune from suit, not that it is without fault. . . . [T]he facts in the underlying petition allege a possible theory under which Gilbane could be liable for conduct by Empire Steel or someone on its behalf. This is sufficient to trigger the duty to defend.

Id. at 724 (internal citations & footnotes omitted).

Although the Plaintiff invites the Court to follow the district court's holding in Gilbane Building, it declines to do so. Unfortunately for the Plaintiff, the district court's determination was reversed as to the duty to defend by the Fifth Circuit Court of Appeals just weeks ago in Gilbane Building Co. v. Admiral Insurance Co., ___ F.3d ___, 2011 WL 6153370, at *6 (5th Cir. Dec. 12, 2011) ("Gilbane II").

The court of appeals first took exception to the district court's finding that Parr's assertion he walked down the ladder in muddy boots raised an inference of his contributory negligence. Gilbane II, 2011 WL 6153370, at *7. Parr's petition contained the following allegation, which, as the court noted, did not in fact aver that he walked down the ladder in muddy boots:

> The Gilbane Defendants failed to keep the construction site in a clean and functional condition. During the month of January 2007 the Houston area received large amounts of rainfall. As a result of this rainfall, the construction site accumulated large amounts of mud. This mud was tracked in from the surrounding area into the building under construction. As a result of the mud being tracked inside, the work area became slippery and hazardous. The Gilbane Defendants had actual notice of the danger caused by the mud from e-mails and other information given to them by their subcontractors. Despite the Gilbane Defendants' knowledge of the dangers posed by the mud, these Defendants took no action to correct the problem, and as a result, Plaintiff slipped and fell causing his injuries. . . . The Gilbane Defendants controlled the construction elevator on the jobsite . . . . Despite the fact that the construction workers worked until five o'clock each day, the Gilbane Defendants sent the elevator operator home around four o'clock. Due to the fact that the elevators were left unmanned and useless after the elevator operator went home, Plaintiff was forced to walk down the ladder where he ultimately slipped and fell.

7

Id. (alterations in original).

The Fifth Circuit recognized that the insurer owed Gilbane "a duty to defend only if the underlying pleadings allege[d] that Empire, or someone acting on its behalf, proximately caused Parr's injuries." Id. at *6. Thus, the court found, the district court's conclusion that, as "the pleadings did not conclusively rule out Parr's negligence[,] it was possible a jury could eventually find that Parr caused his own injuries," improperly shifted the burden of proof, "requiring the party disputing coverage to establish that the pleadings *do not* potentially support a covered claim[.]" Id. at *7. The appellate court stated that the lower court "should only have considered whether the facts pleaded affirmatively implicated Parr's or Empire's negligence." Id. at *8. Thus, the court of appeals ruled that "[l]imiting our review to the face of the petition, as we must, it does not affirmatively allege any facts implicating the negligence of either Empire or Parr, and Admiral has no duty to defend."[1] Id.

---

[1]The Fifth Circuit noted that Gilbane also argued that the court should go outside the eight corners of the pleadings and the policy

> because Parr could not plead Empire's negligence without triggering workers' compensation issues. Gilbane recognizes the "silence" in the pleadings as to Empire's negligence but asks that we disregard it because it indicates not that Empire committed no acts or omissions, but only that Empire is statutorily immune from suit. Importantly, however, there is no allegation of a workers' compensation policy in the pleadings, and facts outside the pleadings, even those easily ascertained, are ordinarily not material to the determination.
>
> . . . Moreover, even if we could consider the workers' compensation policy, Texas law would still require an affirmative allegation of Empire's negligence in the pleadings[.] "

Gilbane II, 2011 WL 6153370, at *9-10 (internal citations & quotation marks omitted). Like the complaint at issue in Gilbane, the Hazels' complaint contained no allegation concerning a workers' compensation policy and, even if it had, Texas law requires an affirmative allegation of GS Lighting's negligence.

8

In light of the Fifth Circuit's decision in Gilbane II, the Court finds that Depositors has no duty to defend Walgreen as the tort complaint did not affirmatively allege facts which implicate the negligence of either GS Lighting or Mr. Hazel. However, as the court in Gilbane II observed, the "duty to indemnify is separate and distinct from the duty to defend." *See* id. at \*10. Under Texas law, an insurer may have a duty to indemnify even if it has no duty to defend. *See* D.R. Horton-Tex., Ltd. v. Markel Int'l Ins. Co., Ltd., 300 S.W.3d 740, 744 (Tex. 2009), *reh'g denied* (Feb. 12, 2010). The duty to indemnify is governed not by the eight-corners doctrine but "is controlled by the facts proven in the underlying suit." Gilbane II, 2011 WL 6153370, at \*10. Thus, the court is to consider "facts outside of those alleged in the petition in determining the duty to indemnify." Id. If the facts proven at trial establish that "liability for 'bodily injury' . . . caused, in whole or in part, by . . . [GS Lighting's] acts or omissions; or . . . [t]he acts or omissions of those acting on [its] behalf," Depositors would owe a duty to indemnify Walgreen. *See* id.

As noted above, GS Lighting also had a duty to indemnify Walgreen under the Agreement which is to be analyzed in accordance with Tennessee law. In interpreting a contract, the role of the court is, in Tennessee, to "ascertain the intention of the parties." 84 Lumber Co. v. Smith, ___ S.W.3d ___, 2011 WL 6148577, at \*2 (Tenn. 2011). "The intention of the parties is based on the ordinary meaning of the language contained within the four corners of the contract." Id. "The interpretation of a contract is a matter of law[.]" Id.

> The central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern. The intent of the parties is presumed to be that specifically expressed in the body of the contract. In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used and to give effect to such intent if it does not conflict with any rule or law, good morals, or public policy. If clear and unambiguous, the literal meaning of the language controls the outcome of contract disputes.

9

> Nonetheless, a contractual provision may be susceptible to more than one reasonable interpretation, which renders the terms of the contract ambiguous. A contract is ambiguous only when it is of uncertain meaning and may fairly be understood in more ways than one. Where the terms of the contract are ambiguous, the intention of the parties cannot be determined by a literal interpretation of the language, and the courts must resort to other rules of construction.

Planters Gin Co. v. Fed. Compress & Warehouse Co., Inc., 78 S.W.3d 885, 890 (Tenn. 2002) (internal citations & quotation marks omitted).

In arguing that it has no duty to indemnify Walgreen under the Agreement, GS Lighting points out that the plain language thereof provides indemnity where GS Lighting or its employees causes injury to *Walgreen or a third party*. The Agreement does not, GS Lighting insists, indemnify Walgreen for *its own negligence.*

The general intent of indemnity provisions is "to provide against the loss or liability of one party through the operations of the other, or caused by physical conditions that are under the control of the indemnifying party, not the indemnified party." Phoenix Ins. Co. v. Estate of Gainer, No. M2007-01446-COA-R3-CV, 2008 WL 5330493, at *7 (Tenn. Ct. App. Dec. 9, 2008), *app. denied* (Aug. 17, 2009). The majority rule, which has been followed by the Tennessee courts, "is that indemnifying a party for its own negligence is extraordinary risk shifting and such agreements must be regarded as exceptional rather than usual in the majority of business transactions." Id. Such an intent must be exhibited in "clear and unequivocal terms." HMC Tech. Corp. v. Siebe, Inc. - Robertshaw Tenn. Div., No. E2000-01093-COA-R3-CV, 2000 WL 1738860, at *2 (Tenn. Ct. App. Nov. 27, 2000). "Mere general, broad, and seemingly all inclusive language is not sufficient to impose liability for the negligence of the indemnitee." Id. (internal quotation marks omitted).

Walgreen, of course, does not suggest that there was any intent to indemnify it for its own negligence. Indeed, the Court finds that the Agreement does not state such an intent in "clear and

10

unequivocal terms." However, GS Lighting's agreement to

> assume[] full responsibility and liability for any injury to [Walgreen] or any third persons . . . caused or resulting from or arising out of any act or omission on the part of [GS Lighting] [or] its employees . . . in connection with [the] Agreement [and] indemnify and hold harmless [Walgreen] . . . from and against any and all costs, losses, [or] claims which [Walgreen] suffers or pays as a result of claims or suits arising out of any such . . . injury . . . caused by . . . negligence . . . of [GS Lighting] [or] its employees . . .

by its terms serves, in the Court's view, to indemnify Walgreen for claims against it for injury to Mr. Hazel, in his capacity as a third person, caused by the negligence of Hazel as an employee of GS Lighting. Thus, the question of whether Walgreen is owed a duty to indemnify under the Agreement and the Policy depends on the answer to the ultimate, and disputed, question of where negligence lies -- at the feet of Walgreen or Mr. Hazel.

The federal Declaratory Judgment Act provides in pertinent part that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The statute "has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." Wilton v. Seven Falls Co., 515 U.S. 277, 286, 115 S. Ct. 2137, 2142, 132 L. Ed. 2d 214 (1995). "[D]istrict courts possess discretion in determining whether and when to entertain an action under the Declaratory Judgment Act, even when the suit otherwise satisfies subject matter jurisdictional prerequisites." Id. at 282, 115 S. Ct. at 2140.

> By the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants. Consistent with the nonobligatory nature of the remedy, a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close. In the declaratory judgment context, the normal

11

> principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration.

Id. at 288, 115 S. Ct. at 2143 (internal footnote omitted).  "District courts must be afforded substantial discretion to exercise jurisdiction in the first instance, because facts bearing on the usefulness of the declaratory judgment remedy, and fitness of the case for resolution, are peculiarly within their grasp."  Scottsdale Ins. Co. v. Flowers, 513 F.3d 546, 554 (6th Cir. 2008) (quoting Wilton, 515 U.S. at 289, 115 S. Ct. 2137) (internal quotation marks omitted).  This action was brought not pursuant to the federal declaratory judgment law but in accordance with Tennessee's declaratory judgment statute and removed to this Court.  "[T]he discretionary standard that governs federal declaratory judgment actions applies to removed cases brought under a state declaratory judgment statute."  Leasing One Corp. v. Fid. & Deposit Co. of Md., Civ. Action No. 3: 11-35-DCR, 2011 WL 3794367, at *2 (E.D. Ky. Aug. 25, 2011) (citing cases).  The fact that removal was procedurally proper does not preclude the Court's ability to abstain.  Id.

A district court in this Circuit has recognized that "[d]istrict courts must exercise . . . discretion cautiously.  [They] are, after all, courts of limited jurisdiction.  And, if [their] decision to keep a matter does nothing more than cause the parties to engage in litigation on two fronts, [they] are neither furthering the interests of justice nor preserving parties' resources."  Grange Mut. Cas. Co. v. Safeco Ins. Co. of Am., 565 F. Supp. 2d 779, 785 (E.D. Ky. 2008).  The United States Supreme Court has cautioned that "[o]rdinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not governed by federal law, between the same parties."  Brillhart v. Excess Ins. Co. of Am., 316 U.S. 491, 495, 62 S. Ct. 1173, 1175-76, 86 L. Ed. 1620 (1942), *reh'g denied*, 317 U.S. 704, 63 S. Ct. 23, 87 L. Ed. 562 (1942).

In deciding whether to exercise their discretion, courts are to take into account the following factors articulated in Grand Trunk Western Railroad Co. v. Consolidated Rail Corp., 746 F.2d 323 (6th Cir. 1984):

(1) whether the declaratory action would settle the controversy;

(2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue;

(3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for res judicata";

(4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and

(5) whether there is an alternative remedy which is better or more effective.

Assurance Co. of Am. v. Cont'l Dev. & Constr., Inc. 392 F. App'x 472, 475 (6th Cir. 2010) (citing Grand Trunk, 746 F.2d at 326). The court is to make a "full inquiry into all relevant considerations." Liberty Mut. Fire Ins. Co. v. Bohms, No. 1:10-cv-1158, 2011 WL 3268608, at *3 (W.D. Mich. July 29, 2011) (citing Allstate Ins. Co. v. Green, 825 F.2d 1061, 1065 (6th Cir. 1987)); Bhd. Mut. Ins. Co. v. United Apostolic Lighthouse, Inc., 200 F. Supp. 2d 689, 692 (E.D. Ky. 2002) (same).

When the resolution of the controversy depends solely on a question of fact that is before the state court, the first factor weighs in favor of dismissal. *See* Bituminous Cas. Corp. v. J & L Lumber Co., Inc., 373 F.3d 807, 813 (6th Cir. 2004). This Court could either reach the same conclusion as the state court on the issue of Mr. Hazel's fault, resulting in an unnecessary declaration that is a waste of federal judicial resources, or it could disagree with the state court, resulting in inconsistent and contrary judgments. *See* id. at 813-14 (pointing out the possibility of inconsistent judgments in finding factor weighed against exercise of jurisdiction). Nor would a declaratory judgment on indemnity resolve the controversy in this case. While a judgment would settle the controversy as

13

between Walgreen and the Defendants herein, the Hazels are not parties to this action. Accordingly, the judgment would not be binding on them and would not operate as *res judicata* in the state tort suit. *See* id. at 814. Therefore, a declaratory judgment in this Court would neither settle the controversy nor be useful in clarifying the legal relationships at issue.

"The third factor is meant to preclude jurisdiction for declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum." Flowers, 513 F.3d at 558 (citing AmSouth Bank v. Dale, 386 F.3d 763, 788 (6th Cir. 2004)) (internal quotation marks omitted). "The question is . . . whether the declaratory plaintiff has filed in an attempt to get [its] choice of forum by filing first." AmSouth Bank, 386 F.3d at 789. That is clearly not the case here, as Walgreen sought declaratory judgment in the same state court as the underlying action, only to have it removed to this Court by the Defendants.

With respect to the fourth factor, "where another suit involving the same parties and presenting opportunity for ventilation of the same state law issues is pending in state court, a district court might be indulging in 'gratuitous interference' if it permitted the federal declaratory action to proceed." Wilton, 515 U.S. at 283, 115 S. Ct. at 2141 (internal citation omitted). That said, "the mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." Flowers, 513 F.3d at 559-60. Courts are to consider three subfactors in determining whether an exercise of jurisdiction would increase friction between the federal and state courts:

(1) whether the underlying factual issues are important to an informed resolution of the case;

(2) whether the state trial court is in a better position to evaluate those factual

14

>    issues than is the federal court; and
>
> (3)  whether there is a close nexus between underlying federal and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.

Id. at 560.

In considering the first subfactor, the court looks at "whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." Id. "[L]iability issues being determined in the state court proceeding may well be legally, if not factually, distinct from the issues of policy interpretation which are central to the federal declaratory judgment action." Id. "However, sometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court." Id. In that type of case, federal jurisdiction would not be appropriate. Id. The question at issue before this Court clearly requires factual findings with respect to liability on the part of Mr. Hazel for his injury. If he is not found to be at fault, GS Lighting and Depositors have no duty to indemnify Walgreen. If he is adjudicated at fault, the duty of indemnity may be triggered. Accordingly, the Court must conclude that this subfactor does not support jurisdiction. *See* Healthcare Underwriters Group of Ky. v. Lexington Ins. Co., Civ. Action No. 3:09-CV-778-H, 2010 WL 145116, at *4 (W.D. Ky. Jan. 8, 2010) (where question before the court in federal declaratory action depends on the same factual issues before the court in the pending state action, this factor weighs against exercise of jurisdiction).

The second subfactor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." Flowers, 513 F.3d at 560. State courts are generally considered to be in a better position to determine novel questions of state law. Id. "[W]hen an

15

insurance company is not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend is before the state court[,] a decision by the district court on these issues would not offend principles of comity." Id. There is nothing to suggest that a novel question of Tennessee law is at issue in this case. Thus, the second subfactor supports hearing Walgreen's claims.

      The final subfactor disfavors jurisdiction where the federal action implicates important state policies that should, therefore, be considered by the state court. Id. at 561. "[I]ssues of . . . insurance contract interpretation are questions of state law with which . . . state courts are more familiar and, therefore, better able to resolve." Id. (internal quotation marks omitted). "[S]tates regulate insurance companies for the protection of their residents, and state courts are best situated to identify and enforce the public policies that form the foundation of such regulation." Id. Even where it is clear how the issues in the declaratory action would be handled by the state courts, they nonetheless remain in the better position to resolve insurance policy interpretation disputes. Id. Thus, this factor weighs on the side of declining jurisdiction. *See* id. On the whole then, the Court finds that an exercise of jurisdiction would increase the friction between the federal and state courts and constitute an improper encroachment upon the Tennessee courts' jurisdiction.

      As to the fifth factor, Flowers instructs that "[a] district court should deny declaratory relief if an alternative remedy is better or more effective." Id. at 562 (quoting Grand Trunk, 746 F.2d at 326) (internal quotation marks omitted). The court's inquiry "must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." Id. Walgreen could, and did, file a declaratory action in the Tennessee courts. It is possible that the two actions may be combined in one state court action so that the issues of liability and indemnity can

16

be resolved in the same case. If the indemnity issue is to be decided in state court, it will be determined after the question of liability is answered. Because the issue of liability depends on factual findings made in the underlying state case, this Court, if it were to retain jurisdiction over this matter, could not resolve the issue of indemnity until determination of the tort action. Thus, a federal declaratory judgment would occur no more quickly than one to be entered by the state court. As there is no advantage to the Plaintiff in seeking a federal declaratory judgment, this factor weighs against exercising jurisdiction in this case.

After making "a full inquiry into all relevant considerations," the Court is convinced that an exercise of jurisdiction in this case would serve no useful purpose based on the clear weight of the factors in favor of declining jurisdiction. *See* Bhd. Mut. Ins. Co., 200 F. Supp. 2d at 692. Indeed, none of the five Grand Trunk factors fall on the side of exercising jurisdiction. Consequently, exercise of the "unique and substantial discretion" conferred on the district courts under the Declaratory Judgment Act is not appropriate. *See* Nautilus Ins. Co. v. Grayco Rentals, Inc., Civ. Action No. 10-133-ART, 2011 WL 839549, at *1 (E.D. Ky. Mar. 7, 2011) ("it is a rare case in which federal district courts should assert jurisdiction over an insurance company's declaratory judgment action to resolve indemnity issues ancillary to an ongoing state-court case").

## *CONCLUSION*

For the reasons set forth herein, the Court finds that Depositors has no duty to defend under the Policy. Further, the Court declines to exercise jurisdiction over this action for declaratory relief as to indemnification and REMANDS that issue to the state court. *See* Leasing One Corp., 2011 WL 3794367, at *6 (where Grand Trunk factors weighed against exercise of jurisdiction in removed case, remand to state court appropriate).

IT IS SO ORDERED this 4th day of January 2012.

                                          s/ J. DANIEL BREEN
                                          UNITED STATES DISTRICT JUDGE